## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### Northern Division

| | | |
|---|---|---|
| **AGV SPORTS GROUP, INC.** | * | |
| **Plaintiff,** | * | **Civil Action No. 1:11-cv-00016-GLR** |
| **v.** | * | |
| **LEMANS CORPORATION** | * | |
| **Defendant.** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## LEMANS CORPORATION'S MEMORANDUM IN OPPOSITION TO
## AGV SPORTS GROUP'S MOTION TO COMPEL DOCUMENT PRODUCTION

Defendant LeMans Corporation ("LeMans"), by and through undersigned counsel, hereby files this memorandum in opposition to Plaintiff AGV Sports Group's ("AGVSG") motion to compel, and states as follows:

### SUMMARY

This Court should deny AGVSG's motion to compel for one principal reason. AGVSG's motion to compel, which AGVSG drafted in August 2011, is moot because since that time, LeMans has produced approximately 11,000 additional documents responsive to AGVSG's written discovery requests, which fully satisfy LeMans' discovery obligations. Moreover, AGVSG's motion and Rule 104.7 Certificate contain several omissions and alarming misrepresentations deserving of clarification.

Notwithstanding, LeMans submits herewith a response to each purportedly deficient discovery request, further demonstrating that LeMans has produced all documents responsive to AGVSG's document requests. In addition, pursuant to this Court's June 20, 2013 Order, LeMans

submits an affidavit providing details of its search for responsive documents and communications.

Finally, although improperly raised in its motion to compel, AGVSG is nevertheless entitled to no additional time to depose LeMans' past or present employees or personnel. After six discovery extensions, discovery finally closed on January 10, 2013. Because AGVSG waited six months after the close of discovery, despite warnings that it was approaching the 15-hour time limit for depositions, it cannot satisfy the "good cause" standard applicable to requests for amending the Scheduling Order by demanding additional deposition time.[1]

## I.   BECAUSE LEMANS HAS PRODUCED ALL RESPONSIVE DOCUMENTS, AGVSG'S MOTION TO COMPEL IS MOOT

Since AGVSG drafted its August 2011 motion to compel that is now before the Court, LeMans produced nearly 11,000 documents. AGVSG omits from its motion and Rule 104.7 Certificate that LeMans made *three* supplemental document productions—during the course of discovery—pursuant to Rule 26(e).  To date, LeMans has produced 14,951 bates labeled documents responsive to AGVSG's document requests. LeMans' initial document production of April 13, 2011, contained 4,045 Bates labeled documents that were responsive to AGVSG's requests. Since its initial production, LeMans has made three supplemental document productions. First, on or about May 4, 2012, LeMans produced an additional 2,912 documents[2]

---

[1] AGVSG has pursued a shotgun approach in its motion to compel and Rule 104.7 Certificate, casting numerous aspersions having nothing to do with the issues at hand. Because of their lack of relevancy, LeMans declines to respond to each and every one of these aspersions, except to note that it can and will respond should the Court deem in necessary. In this regard, LeMans' silence should not be deemed an admission. By way of example of LeMans' position on this point, AGVSG alleges "stunning inconsistencies" that are simply not supported by the record and characterizes Lynne Severson, LeMans' Vice President of Administration, as the "personal administrative assistant" of Jeff Fox.

[2] This production should have included a far greater number of documents, but an outside vendor, Benchmark, failed to include all of them.  *See* Holzhuter Affidavit at ¶ 8 (attached hereto as Exhibit 1); *see also* Email from Paul M. Finamore, counsel for LeMans, to Melissa McClellan and Scott Trask, Benchmark LLC (Oct. 5, 2012) (attached hereto as Exhibit 2).

(LeMans 4046-6958).[3] Second, on or about July 20, 2012, LeMans produced 120 documents

(LeMans 6959-7079).[4] Finally, on or about November 2, 2012, LeMans produced another 7,871

documents (LeMans 7080-14951).

Notwithstanding AGVSG's omission of this fatal fact, which consequently moots its

motion to compel, LeMans responds to each of AGVSG's requests as follows:

**Request 7:** Each document made, kept, sent or received by Jeff Fox which refers to
AGVSG, AGV, or Michael Parrotte.

Purported Deficiencies: LeMans has produced only two (2) pieces of correspondence in
response to this request. It is inconceivable that Jeff Fox "made, kept, sent or received" only two
(2) emails between 2004-2009. Mr. Fox was instrumental in laying the groundwork for both the
proposed licensing agreement and the $750,000 distribution agreement order. In addition, Mr.
Fox was heavily involved in the August, 2006 NVP show which LeMans produced.

Response: LeMans produced several documents from Jeff Fox prior to August 2011,

including, but not limited to, 1-17, 20-21, 56-59, 61-65, 67-86, and 89-125. Since August 2011,

LeMans produced additional pieces of correspondence in response to this request, including

LeMans 6959-6961. *See* Holzhuter Affidavit at ¶ 12.

Moreover, AGVSG ignores the sworn testimony of LeMans' employees on this topic.

During the deposition of Steve Thurler, an employee of LeMans' infrastructure support

department (i.e., "IT Department"), Mr. Thurler testified that Jeff Fox was not technical and did

not have a lot of emails. *See* Thurler Dep. 36:6 (Jan. 10, 2013) (attached hereto as Exhibit 3).

Lynne, Severson, LeMans' Vice President – Administration, also testified that Jeff Fox rarely

sent emails. *See* Severson Dep. 7:6 (June 14, 2012) (attached hereto as Exhibit 4). For some

reason, despite its alleged concern, AGVSG failed to inquire about what documents Jeff Fox

maintained, sent or received regarding these matters when it deposed him.

---

[3] *See* Holzhuter Affidavit at ¶ 5.
[4] *Id.*

**Request 8:** Each document made, kept, sent or received by Fred Fox which refers to AGVSG, AGV, or Michael Parrotte.

Purported Deficiencies: AGVSG produced, in response to LeMans' document requests, emails from Michael Parrotte to Mr. Fox. LeMans knew these documents existed, but falsely reported "None" when AGVSG requested their production. Further, it is inconceivable that LeMans' CEO never "made, kept, sent or received" a single piece of correspondence referring to AGVSG, a multi-million dollar apparel brand which LeMans exclusively distributed in North America for more than 12 years.

Response: AGVSG has failed to identify the Bates labeled documents that allegedly represent the "emails from Michael Parrotte to Mr. Fox." Fred Fox is the 76-year-old Chair of the Board of LeMans. He does not use a computer and has never sent an email. *See* Fred Fox Dep. 10:1-4 (July 25, 2012) (attached hereto as Exhibit 5). Ms. Severson testified that she was not aware of any document issued by Fred Fox that refers to AGVSG and that Fred Fox rarely communicates in writing to LeMans employees. *See* Severson Dep. 21:3-12 (June 14, 2012) (Exhibit 4).  For some reason, despite its alleged concern, AGVSG failed to inquire about what documents he kept, sent or received regarding these matters when it deposed Fred Fox other than to ask if he uses a computer and whether he sends emails or receives them to which Fred Fox responded, "No." *See* Fred Fox Dep. 10:1-5 (July 25, 2012) (Exhibit 5).  *See also* Holzhuter Affidavit at ¶ 12.

Notwithstanding the foregoing, Lemans produced the following Bates labeled Fred Fox documents: LeMans 3966-3967.

**Request 9:** Each document made, kept, sent or received by Lynne Severson which refers to AGVSG, AGV, or Michael Parrotte.

Purported Deficiencies: AGVSG produced, in response to LeMans' document requests, documents which were either sent, received, or include Ms. Severson's name. LeMans knew these documents existed, but falsely reported "None" when AGVSG requested their production. Further, Ms. Severson's name is mentioned numerous times in documents attached to emails produced by LeMans. Specifically, Ms. Severson's name is listed as the signatory on a document titled "Agreement Regarding Orders." It is inconceivable that LeMans' Vice President of

Administration, who was intimately involved in the AGVSG-LeMans relationship, would not have "made, kept, sent or received" any relevant documents.

Response: Ms. Severson has testified that she never issued any paper or electronic document that refers to AGVSG. *See* Severson Dep. 21:13-16 (June 14, 2012) (Exhibit 4). *See also* Holzhuter Affidavit at ¶ 12.  Lynne Severson testified she had no role in drafting the Agreement Regarding Orders. *See* Severson Dep. 25–26 (June 14, 2012) (Exhibit 4).  Jeff Hart explained how documents are drafted for signatures only by the high officers of LeMans who were allowed to sign such agreements. *See* Hart Dep. 126:11-18 (July 25, 2012) (attached hereto as Exhibit 6). Other than the Agreement Regarding Orders that is explained above, AGVSG has not identified the Bates labeled documents AGVSG allegedly produced "which were either sent, received, or include Ms. Severson's name." *See also* Holzhuter Affidavit at ¶ 12.

**Request 10:** Each document made, kept, sent or received by Jeff Hart which refers to AGVSG, AGV, or Michael Parrotte.

Purported Deficiencies: AGVSG produced, in response to LeMans' document requests, several documents which are responsive to this request, but which LeMans failed to produce. It is therefore likely that additional documents exist which LeMans has failed to identify and produce.

Response: LeMans has produced *thousands* of Jeff Hart related documents, including *hundreds* of Jeff Hart emails. These documents were among the roughly 11,000 additional documents produced after August 2011, which AGVSG fails to mention in its motion. AGVSG has failed to identify the Bates labeled "several documents" kept, sent or received by Jeff Hart that LeMans failed to produce. *See also* Holzhuter Affidavit at ¶ 12.

**Request 11:** Each document made, kept, sent or received by Lou Lopez which refers to AGVSG, AGV, or Michael Parrotte.

Purported Deficiencies: AGVSG produced, in response to LeMans' document requests, several documents which are responsive to this request, but which LeMans failed to produce. It is hard to believe that LeMans' National Sales Manager would not have "made, kept, sent or received" any documents around the time of the August, 2006 NVP show.

Response: LeMans produced documents in response to this request. Specifically, the following Bates labeled Lou Lopez documents were produced as part of LeMans' initial production: LeMans 3144-3199. During Mr. Lopez's deposition, AGVSG made no inquiries regarding purportedly missing documents. *See also* Holzhuter Affidavit at ¶ 12.

**Request 12:** Each document made, kept, sent or received by Matt Mueller which refers to AGVSG, AGV, or Michael Parrotte.

Purported Deficiencies: AGVSG produced, in response to LeMans' document requests, several documents which are responsive to this request, but which LeMans failed to produce. It is therefore likely that additional documents exist which LeMans has failed to identify and produce.

Response: In its initial document production, LeMans produced numerous documents and emails from Matt Mueller. As of August 2011, LeMans believed in good faith that it had produced all responsive documents in its possession. Since August 2011, after LeMans learned of its network server search/retention capabilities, LeMans produced *thousands* of Matt Mueller related documents, including *hundreds* of Matt Mueller emails, pursuant to Rule 26(e). These documents were among the roughly 11,000 additional documents produced after August 2011, which AGVSG fails to mention in its motion. Matt Mueller was also deposed on January 10, 2013, during which time AGVSG made no inquiries regarding purportedly missing documents. *See also* Holzhuter Affidavit at ¶ 12.

**Request 23:** Each document referring or relating to the inventory of AGVSG and/or AGV products, in the possession of LeMans, including but not limited to Parts Unlimited and Dennis Kirk, made or kept at any LeMans location including the location of all LeMans subsidiaries, affiliates, and dealers.

Purported Deficiencies: The Federal Rules of Civil Procedure do not allow LeMans to "refuse[] to respond" to a discovery request. Instead, LeMans is required to respond to each request, and its "response must either state that inspection and relative activities will be permitted as requested or state an objection to the request, including the reasons." Fed. R. Civ. P. 34(b)(2). Further, LeMans has no authority to determine whether the requested documents are relevant or reasonably calculated to lead to the discovery of admissible evidence.

Response: Since August 2011, LeMans produced *hundreds* of additional documents in response to this request. *See* Email from Paul M. Finamore, counsel for LeMans, to J. Stephen Simms, counsel for AGVSG (Nov. 2, 2012) (attached hereto as Exhibit 7). Specifically, LeMans 14316-14447 were produced as responsive to this Request regarding LeMans' inventory. *See id.* *See also* Holzhuter Affidavit at ¶ 7.

**Request 24:** Each document relating to the manufacture, purchase or distribution (including planning for manufacture, purchase or distribution) by or for LeMans of any item which LeMans distributed or sold in place of the products or items represented or promoted by AGVSG.

Purported Deficiencies: AGVSG's request does not allege or imply that LeMans "replaced" AGV. It is hard to believe that LeMans did not somehow fill the product void after LeMans terminated the distributorship agreement with AGVSG in August, 2009.

Response: As originally answered, there are no such documents. LeMans did not distribute or sell products or items in place of those products or items represented or promoted by AGVSG. In short, LeMans did not "replace" AGVSG.[5] *See also* Collins Dep. 52:21 – 53:12 (July 24, 2012) (attached hereto as Exhibit 8).

**Request 26:** Each document which supports or refutes any defense to the Complaint.

Purported Deficiencies: AGVSG has documents – which LeMans has not produced – which refer to the licensing agreement and the continuing AGVSG-LeMans business relationship based on the original distribution agreement, which are clearly responsive and relevant to AGVSG's document request. Further, LeMans has failed to produce any documents to support its affirmative defenses of statute of limitations, failure to perform, and clean hands.

Response: Many, if not most of, the documents produced by LeMans support LeMans' denial of liability and its affirmative defenses, including, but not limited to, all exhibits

---

[5] LeMans did not "terminate" the "distributorship agreement" with AGVSG, a fact which AGVSG has already conceded in its various pleadings filed with this Court that the "distributorship agreement" expired by its own terms. Therefore, AGVSG must likewise concede that there *could, indeed, not* be any responsive documents.

referenced and attached to LeMans' Motion for Summary Judgment, Opposition Briefs to

AGVSG's serial Summary Judgment Motions, and various Reply Briefs.

## II.    AGVSG IS NOT ENTITLED TO ADDITIONAL DEPOSITION TIME

In AGVSG's Local Rule 104.7 Certificate, AGVSG devotes nearly two pages of its five-

page motion to an issue that is entirely irrelevant to its motion to compel. Specifically,

paragraphs 10-13 of the Certificate are devoted to the parties' 15-hour agreed-upon deposition

time limitation, which AGVSG seemingly now argues—six months after the close of

discovery—is insufficient. Although LeMans need not address AGVSG's deposition limitation

argument in the context of the instant motion to compel, and the Court need not consider it as

AGVSG seeks no amendment to the Scheduling Order in its request for relief,[6] LeMans is

compelled to do so in light of several omissions deserving clarification.[7]

---

[6] Even if AGVSG did request an amendment to the Scheduling Order, it would not be entitled to one because it has not demonstrated "good cause" for amending the scheduling order and reopening discovery. "[A] scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarding by counsel without peril." *Potomac Electric Power co. v. Electric Motor Supply, Inc.*, 190 F.R.D. 372, 375 (D. Md. 1999) (internal quotation marks omitted), *reconsideration denied*, 192 F.R.D. 511 (D. Md. 2000). "The Rule 16(b) analysis thus focuses on the timeliness of a request amendment to the scheduling order and requires the movant to show that it acted diligently." *Randolph v. ADT Sec. Servs.*, 2012 U.S. Dist. LEXIS 82398, at *32 (citing *Rassoull v. Maximus, Inc.* 209 F.R.D. 372, 374 (D. Md. 2002)). "Indeed, while the court may also consider factors such as whether the non-moving party could be prejudiced by the delay and length of the delay, *Tawwaab v. Va. Linen. Serv., Inc.*, 729 F.Supp.2d 757, 768-60 (D. Md. 2010), 'the primary consideration . . . in [determin]ing whether "good cause" has been shown under *Rule 16(b)* relates to the movant's diligence,' *Rayazuddin v. Montgomery Cnty., Md.*, No. DKC 11-0951, 2012 U.S. Dist. LEXIS 24531, 2012 WL 642838, at *3 (D. Md. Feb. 27, 2012). 'Lack of diligence and carelessness are the "hallmarks of failure to meet the good cause standard."'" *Randolph*, 2012 U.S. Dist. LEXIS 82398, at *32-33. During the course of discovery and the taking of depositions, AGVSG has demonstrated lack of diligence. Its carelessness is memorialized in its own Rule 104.7 Certificate, which notes that Mr. Mueller's deposition lasted approximately three hours—two hours longer than had been agreed to—but AGVSG's counsel "had barely begun to scratch the surface" of questioning regarding certain documents. Why AGVSG apparently frittered away three of its deposition hours on less important issues is unclear. Regardless, AGVSG's carelessness surely precludes it from meeting the good cause standard necessary to obtain an amendment to the scheduling order.

[7] AGVSG attaches several documents to its motion, alleging that it produced documents that were glaringly omitted from LeMans' document production. Of the 31 pages attached to AGVSG's motion in support of this allegation, LeMans produced all but three of those documents. *See* Document Comparison to AGVSG Exhibit 6 (attached hereto as Exhibit 9). This same allegation by AGVSG as to its intended exhibits for the Mueller deposition is likewise devoid of merit as many of the same documents were produced with LeMans Bates numbers (235) or very similar formats, with the exception of headers in some circumstances (approximately 5 to 10 pages) or were peculiarly within AGVSG's possession, such as photographs (15 pages).

First, AGVSG omits the three exhibits to LeMans' counsel's email of February 11, 2013. *See* Email and exhibits thereto from Paul M. Finamore, counsel for LeMans, to Michael Jacobs, counsel for AGVSG (Feb. 11, 2013) (attached hereto as Exhibit 10).[8] Tellingly, AGVSG never responded to this email, challenged its substance, or objected to its conclusion. The exhibits to the email demonstrate that LeMans' counsel warned AGVSG of the deposition limits time again and also memorialized a similar warning raised by AGVSG's counsel. AGVSG's apparent shock to learn that LeMans intended to abide by the agreed-upon limits set forth in the Scheduling Order is nothing short of disingenuous. Moreover, AGVSG has already exceeded the 15-hour limitation as a result of deposing 12 past and present LeMans' employees. *See* AGVSG Expended Net Deposition Time (attached hereto as Exhibit 11).

Second, AGVSG falsely states that AGVSG allowed Lemans to question AGVSG's principal, Michael Parrotte, *over "three separate days of nearly seven hours each."* Mr. Parrotte's deposition transpired over *two days, not three, and lasted a total of 8.15 hours. See* LeMans Expended Net Deposition Time (attached hereto as Exhibit 12). By misrepresenting facts concerning Mr. Parrotte's deposition, AGVSG seems to suggest that AGVSG permitted LeMans to exceed the 15-hour deposition limit *based on Mr. Parrotte's deposition alone*, such that LeMans owes AGVSG the same courtesy. In reality, LeMans did not even use the full 15 hours of deposition time allotted. *See id.*

Finally, AGVSG incredibly gives no consideration to the heavy discovery burden already borne by LeMans in this case. LeMans' counsel has traveled to Wisconsin for numerous depositions. LeMans has spent hundreds of hours reviewing thousands of documents for

---

[8] AGVSG now argues that the start time for the Mueller deposition was imposed upon it by LeMans, but fails to supply any support for this contention, particularly after the start time and anticipated length was, in fact, proposed by AGVSG's counsel. *See* Exhibit 10 with its attachment marked as Exhibit 1.

purposes of document production. LeMans has incurred substantial expenses in connection with an 18-month long discovery process, including 12 depositions, even arranging for such depositions without the need for subpoenas or witness appearance fees, and producing nearly 15,000 documents over which AGVSG continues to dispute. By contrast, AGVSG has only had to make three witnesses available for deposition and has produced only approximately 3,274 documents,[9] some of which were mis-numbered, a fraction of the nearly 15,000 pages produced by LeMans.

In short, AGVSG has not sufficiently demonstrated extraordinary circumstances to justify amending the Scheduling Order, which was agreed to by AGVSG and has been in place since February of 2011.

## CONCLUSION

For the foregoing reasons, Defendant LeMans Corporation respectfully requests that this Honorable Court deny Plaintiff AGV Sports Group, Inc's motion to compel.

Respectfully submitted,

Dated: June 27, 2013

_/s/ Jason C. Reichlyn_
Paul M. Finamore, Esquire (#05992)
Jason C. Reichlyn (#29997)
Niles, Barton & Wilmer, LLP
111 South Calvert Street, Suite 1400
Baltimore, Maryland 21020
T: 410-783-6300
F: 410-783-6363
pmfinamore@nilesbarton.com
jcreichlyn@nilesbarton.com

---

[9] This stands in stark contrast to AGVSG's President's statement that AGVSG saves almost everything from its 27-year history and retains records on its eight terabyte computer. To complain that LeMans failed to produce documents in comparison to AGVSG's meager production is telling.

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 27, 2013, a copy of the foregoing Memorandum in

Opposition to AGV Sports Group's Motion to Compel Document Production was filed on this

Court's CM/ECF system and electronically served to all counsel of record.


                                               /s/     Jason C. Reichlyn