IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

AGV SPORTS GROUP, INC., :

    Plaintiff, :

v. : Civil Action No. GLR-11-16

LEMANS CORPORATION, :

    Defendant. :

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant's, LeMans Corporation ("LeMans"), Motion for Summary Judgment. (ECF No. 57). LeMans asks this Court to grant its Motion for Summary Judgment and dismiss Plaintiff's, AGV Sports Group, Inc.'s ("AGVSG"), Complaint with prejudice. The issues have been fully briefed and no hearing is necessary. See Local Rule 105.6 (D.Md. 2011). For the reasons described below, LeMans's Motion for Summary Judgment will be granted in part and denied in part.

## I. BACKGROUND[1]

AGVSG is a Maryland corporation that designs, distributes, and licenses AGV Sport, or AGVSPORT branded motorsports apparel, including boots, gloves, jackets, and accessories. LeMans is a Wisconsin corporation that distributes motorsports parts, accessories, and apparel from various vendors, including AGVSG.

---

[1] Unless otherwise noted, the following facts are taken from the Complaint, Motion for Summary Judgment, Response in Opposition, and Reply.

LeMans began distributing AGV products in 1989, at which time AGVSG did not yet exist.  Rather, at that time, LeMans did business with AGV SpA, an Italian company, through its United States importer and designated resident agent, Michael Parrotte. In subsequent years, Mr. Parrotte formed AGVSG, a separate entity, which designs and markets an apparel line under the AGV name pursuant to a license from AGV SpA.

In 1994, AGVSG and LeMans entered into a written exclusive distribution agreement (the "Initial Agreement") for a term of three years, which, in the absence of sufficient notification, would automatically renew up to three times, each time for a three-year period.  As neither party took steps to end the agreement, it continued through the fall of 2006.  At that time, the parties were close to reaching an agreement (the "Licensing Agreement") that would grant LeMans an exclusive license and virtual ownership of the AGVSport trademark in the United States and Canada.[2]  AGVSG contends that, during negotiations over the Licensing Agreement, the parties continued their relationship pursuant to the terms of the Initial Agreement, via an "Interim Agreement," which continued the exclusive distributorship.

---

[2] Under this agreement, LeMans would assume all distribution, warehousing, advertising, marketing, and sub-licensing duties from AGVSG, while AGVSG would concentrate on product design, graphics design, brand development, and marketing support.

By the fall of 2007, the parties had not yet signed the Licensing Agreement. Nonetheless, LeMans allegedly instructed AGVSG to begin operating under the terms of the Licensing Agreement, as its finalization was imminent. Thus, in reliance on the Licensing Agreement, and in anticipation of orders from LeMans, AGVSG prepared product designs for the next three riding seasons, but it ceased advertising, terminated its national sales manager, and laid off about half its office staff.

Conversely, LeMans contends that, while negotiations were ongoing, it discovered that AGVSG had neglected to disclose fully the extent of its rights to assign an exclusive license to LeMans. LeMans learned that Dainese, an Italian manufacture of leather motorsports riding apparel and the purchaser of AGV Helmets, reserved the legal right to enter into the North American market with AGV-branded apparel. Accordingly, LeMans became uneasy over finalizing the Licensing Agreement. LeMans asserts that, by November 2007, it became clear that AGVSG would not be able to assign an exclusive license to LeMans and concluded that the Licensing Agreement would not be viable.

LeMans alleges that since December 13, 2006, the parties continued to conduct business on a purchase order-by-purchase order basis. To this end, AGVSG avers that, between November 2007 and February 2008, AGVSG and LeMans worked together to prepare LeMans's product order for the beginning of the 2008

3

season, presumably agreeing that LeMans would place an order totaling $750,000.00 in wholesale value. Upon reaching this agreement, LeMans representatives purportedly informed AGVSG that they would submit a formal purchase order for the agreed upon items within two weeks of their February 2008 meeting. AGVSG maintains LeMans never submitted a purchase order and, in fact, contacted AGVSG about three weeks later, informing AGVSG that it would not go forward with the Licensing Agreement or the 2008 product order.

AGVSG filed its Complaint on January 4, 2011, seeking relief from LeMans for breach of contract (Count I), or, in the alternative, promissory estoppel (Count II). (ECF No. 1). AGVSG's promissory estoppel claim relies on two separate promises made with respect to the LeMans's intention to enter into a new Licensing Agreement with AGVSG, and LeMans's promise to submit a formal purchase order for the 2008 riding season. Following limited initial discovery, AGVSG filed its first Motion for Partial Summary Judgment. (ECF No. 18). LeMans filed its Response on August 29, 2011 (ECF No. 19), but AGVSG later withdrew its first Motion for Partial Summary Judgment (ECF No. 21).

After agreeing to an extended deadline for dispositive motions, and after additional discovery, AGVSG filed its second Motion for Partial Summary Judgment on December 10, 2012. (ECF

4

No. 49). LeMans filed its Response on January 16, 2013 (ECF No. 55), and AGVSG filed its Reply on February 4, 2013 (ECF No. 56). The Court issued a Memorandum Opinion and Order denying AGVSG's Motion for Partial Summary Judgment on August 18, 2013. (ECF Nos. 76, 77).

LeMans filed the instant Motion for Summary Judgment on April 19, 2013. AGVSG filed its Response on June 14, 2013 (ECF No. 62), and LeMans filed its Reply on July 15, 2013 (ECF No. 72).

## II. DISCUSSION

A. **Standard of Review**

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a).

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970)). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "[T]he mere existence

of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-48.

A "material fact" is a fact that might affect the outcome of a party's case. Id. at 248; JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001).

A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. Rule 56(c) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985).

Because this case arises under the Court's diversity jurisdiction, the substantive law to be considered is that of the state in which the action arose. <u>Estrin v. Natural Answers, Inc.</u>, 103 F.App'x 702, 704 (4th Cir. 2004). In this case, Maryland law applies.

**B. <u>Analysis</u>**

LeMans argues it is entitled to summary judgment on four grounds: (1) the Complaint is barred by Maryland's three-year statute of limitations; (2) AGVSG cannot prove that it suffered any recoverable damages; (3) enforcement of the contract is barred by the statute of frauds; and (4) Maryland's economic loss doctrine bars AGVSG's promissory estoppel claim. The Court will grant partial summary judgment with respect to Count II, to the extent it concerns the Licensing Agreement, because it is time-barred by Maryland's statute of limitations, and will deny summary judgment with respect to all other counts.

The Court denied AGVSG's Motion for Partial Summary Judgment regarding the existence of an Interim Agreement for an exclusive distributorship between the parties because it found that disputed issues of material fact exist as to whether the Interim Agreement was formed. (<u>See</u> Mem. Op., ECF No. 76). Having determined that genuine issues of material fact exists as to the formation of the Interim Agreement, the Court dispensed with analysis of the parties' arguments regarding the

7

enforceability of the Interim Agreement under the statute of frauds. (See id. at 14 n.5). Accordingly, the Court will similarly dispense with an analysis of the parties' arguments regarding the statute of frauds and the statute of limitations with respect to Count I, and deny summary judgment on those grounds.

**1. Failure to Comply with Local Rule 105.2(c)**

In a footnote in its Opposition, AGVSG argues that LeMans's Motion for Summary Judgment should be denied on the basis that it failed to comply with Local Rule 105.2(c) with regard to the filing of cross-motions for summary judgment. Rule 105.2(c) requires the parties to agree among themselves which party is to file the initial motion for summary judgment so that the other party may oppose the initial motion and support its own cross-motion in a single memorandum. See Local Rule 105.2(c) (D.Md. 2011).

LeMans counters by pointing out that AGVSG filed its Motion for Partial Summary Judgment on December 10, 2012 (ECF No. 49), and at that time, discovery had not yet closed. Once discovery closed, and after the last depositions took place, LeMans then determined it was entitled to summary judgment and moved for the same. "Where, as here, both parties are not prepared to file motions simultaneously, [Local Rule 105.2(c)] has no application." Y.B. v. Bd. of Educ. of Prince George's Cnty.,

8

895 F.Supp.2d 689, 701 (D.Md. 2012). Accordingly, Local Rule 105.2(c) is not applicable to the present facts.

**2. Statute of Limitations**

AGVSG's Count II, promissory estoppel claim, as to the Licensing Agreement, is time-barred by the statute of limitations. To the extent Count II, however, relates to the 2008 product order, it is not time-barred.

The limitations period applicable to Maryland contract actions is three years from the date the action accrues. See Md. Code Ann., Cts. & Jud. Proc. § 5-101 (West 2013); see also Singer Co., Link Simulation Sys. Div. v. Balt. Gas & Elec. Co., 558 A.2d 419, 424 (Md.Ct.Spec.App. 1989) ("Section 5-101 governs the limitations period applicable to common law contract actions." (citing Mayor & Council of Federalsburg v. Allied Contractors, Inc., 338 A.2d 275, 280 (Md. 1975)). The right of a contract action generally accrues immediately upon the breach. Id.

"Under the discovery rule, an 'action is deemed to accrue on the date when the plaintiff knew or, with due diligence, reasonably should have known of the wrong.'" Supik v. Bodie, Nagle, Dolina, Smith & Hobbs, P.A., 834 A.2d 170, 178 (Md.Ct.Spec.App. 2003) (quoting Doe v. Archdiocese of Wash., 689 A.2d 634, 638 (Md.Ct.Spec.App 1997)). "[T]he date when a particular plaintiff knows or, with due diligence, objectively

9

should have known of the wrong, is generally a factual determination for a jury, and not the court." Supik, 834 A.2d at 179 (citing Frederick Rd. Ltd. P'ship v. Brown & Sturm, 756 A.2d 963, 974 (Md. 2000)). "[O]nly when there is no genuine dispute of material fact as to when the action accrued, should a trial court grant summary judgment on the basis of limitations; otherwise, the question is one of fact for the trier of fact." Id. at 177.

Under Maryland law, the Court is to apply a four-part test to determine whether a claim for promissory estoppel has been adequately stated. There must be: (1) a clear and definite promise; (2) where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promise; (3) which does induce actual and reasonable action or forbearance by the promisee; and (4) causes a detriment which can only be avoided by the enforcement of the promise. Pavel Enter., Inc. v. A.S. Johnson Co., 674 A.2d 521, 532 (Md. 1996) (based on the formulation given by this Court in Union Trust Co. of Md. v. Charter Med. Corp., 663 F.Supp. 175, 178 (D.Md. 1986), aff'd, 823 F.2d 548 (4th Cir. 1987)).

LeMans states that it raised concerns about the Licensing Agreement as early as March 2007. Therefore, it argues, the date of accrual for AGVSG's promissory estoppel claim is not later than March 2007, because AGVSG could not have reasonably

10

continued to rely on any promises regarding a potential agreement. The Court agrees.

AGVSG's promissory estoppel claim as to the Licensing Agreement fails because there is no basis for finding the existence of a "clear and definite promise" subsequent to April 2007.

In its Complaint, AGVSG states that:

> From September 2006 through January 2007, negotiations aimed at finalizing the terms of the Licensing Agreement continued much longer than what was originally stated by LeMans. However, during this time period, AGV Sports Group continually received indications from LeMans that finalization of the Licensing Agreement was imminent. Although small details were yet to be worked out, LeMans instructed Plaintiff to begin operating under the basic terms of the Licensing Agreement as though it were already in force. As a result, AGV Sports Group continued to expect in good faith that a final agreement would soon be signed . . . .

(Compl. ¶ 11).

AGVSG goes on to indicate that in February 2007:

> In continued reliance on LeMans' August 2006 verbal commitment to enter a Licensing Agreement, and all the preparation therefor by both of the contracting parties, and in compliance with explicit instructions from LeMans, AGV Sports Group had stopped advertising on its own, terminated its internal National Sales Manager who had previously marketed AGV Sports Groups' product to retail dealers, and laid off about half of its office staff. AGV Sports Group took these steps because it was understood that under the Licensing Agreement, LeMans would be taking over the duties performed by the terminated AGV Sports Group personnel for the 2007 riding season and thereafter.

(Id. ¶ 13).

Finally, AGVSG admits that in April of 2007:

> [T]op LeMans managers continued to assure AGV Sports Group that LeMans fully intended to carry on and orally renew the parties' ongoing Exclusive Distributorship Agreement, even though LeMans intended to shelve the proposed Licensing Agreement while LeMans management caught up to speed on the plans that had been made by and at the direction of Jeff Fox.

(Id. ¶ 16).

Taking the facts in a light most favorable to AGVSG, even prior to April 2007, there was no clear and definite promise because the parties were still negotiating the terms of the Licensing Agreement. Even assuming there was a clear and definite promise to enter into a Licensing Agreement prior to April 2007, however, subsequent to April 2007, it was apparent that finalization of the Licensing Agreement was indefinite or uncertain at best. Thus, the date of accrual for AGVSG's promissory estoppel claim is March 2007. AGVSG filed its Complaint on January 4, 2011, over three years after it knew or should have known of its injuries. Accordingly, AGVSG's Promissory Estoppel claim, as to the Licensing Agreement, is time-barred by Maryland's three-year statute of limitations.

With respect to the promissory estoppel claim related to the 2008 product order, AGVSG avers that the parties ironed out the final details of LeMans's major pre-season 2008 product order in February 2008. LeMans alleges it expressly told AGVSG

that it was not going to go forward with the 2008 product order approximately three weeks later. Thus, the date of accrual for AGVSG's promissory estoppel is February 2008, two years and eleven months before the filing of the Complaint. Accordingly, AGVSG's promissory estoppel claim, as to the 2008 product order, is not time-barred by Maryland's three-year statute of limitations.

### 3. Promissory Estoppel and the Economic Loss Doctrine

LeMans argues AGVSG's promissory estoppel claim is barred by the economic loss doctrine. In support of this argument LeMans cites to <u>Sedghi v. Patchlink Corp.</u>, No. JFM-07-1636, 2010 WL 3895472, at *7 (D.Md. Sept. 30, 2010), <u>aff'd in part, rev'd in part</u>, 440 F.App'x 165 (4th Cir. 2011), recognizing Fourth Circuit precedent that characterizes a claim for promissory estoppel as one in tort. <u>See also</u> <u>Jordan v. Alt. Res. Corp.</u>, 458 F.3d 332, 348 (4th Cir. 2006) (explaining that Maryland courts, which disapprove of the term "promissory estoppel," have adopted the analogous tort of detrimental reliance). Generally, the economic loss rule prohibits a plaintiff from recovering in tort for purely economic losses that involve neither a clear danger of physical injury or death, nor damage to property. <u>Morris v. Osmose Wood Preserving</u>, 667 A.2d 624, 630 (Md. 1995). Thus, LeMans argues, AGVSG's promissory estoppel claim is subject to the economic loss doctrine and, because neither the

clear danger of physical injury or death, nor damage to property exceptions apply, the claim is barred. The Court disagrees.

Maryland has accepted the Restatement (Second) of Contracts § 90 (1981) as governing a claim for promissory estoppel. Pavel Enter., Inc., 674 A.2d at 532. The comments to Section 90 of the Restatement indicate that "[a] promise binding under this section is a contract, and full-scale enforcement by normal remedies is often appropriate." Restatement (Second) of Contracts § 90 cmt.d (1981). Moreover, "[i]n Maryland, 'promissory estoppel is an alternative means of obtaining contractual relief.'" Donnelly v. Branch Banking & Trust Co., No. AW-13-852, 2013 WL 5291352, at *10 (D.Md. Sept. 19, 2013) (citing Md. Transp. Auth. Police Lodge No. 34 v. Md. Transp. Auth., 5 A.3d 1174, 1227 (Md.Ct.Spec.App. 2010), rev'd on other grounds, 21 A.3d 1098 (Md. 2011); see also Odyssey Travel Ctr., Inc. v. RO Cruises, Inc., 262 F.Supp.2d 618, 626 (D.Md. 2003) ("Promissory estoppel is a quasi-contractual claim, which is an equitable remedy that permits recovery where, in fact, there is no contract, but where circumstances are such that justice warrants a recovery as though there had been a promise." (quoting Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc., 190 F.Supp.2d 785, 792 (D.Md. 2002)) (internal quotation marks omitted)). Accordingly, the Court finds that recovery on

14

AGVSG's promissory estoppel claim is not barred by the economic loss doctrine.

**4. Recoverable Damages**

Finally, LeMans argues it is entitled to summary judgment because AGVSG cannot prove it suffered any recoverable damages. LeMans argues AGVSG cannot prove it suffered any harm because its employees and corporate designee could not answer damages inquires during the discovery period. The Court disagrees.

A plaintiff need not allege that it suffered any damages to sustain a cause of action for breach of contract. See Taylor v. NationsBank, N.A., 776 A.2d 645, 651 (Md. 2001) ("It is not necessary that the plaintiff prove damages resulting from the breach." (citing Hooton v. Kenneth B. Mumaw Plumbing & Heating Co., 318 A.2d 514, 518 (Md. 1974))). Moreover, even assuming AGVSG cannot prove that it suffered any actual damages, under Maryland law, "'[i]t is well settled that every injury to the rights of another imports damage, and if no other damage is established, the party injured is at least entitled to a verdict for nominal damages.'" Cottman v. State, Dep't of Natural Res., 443 A.2d 638, 640 (Md.Ct.Spec.App. 1982) (quoting Baltimore v. Appold, 42 Md. 442, 457 (1875)); see also Taylor, 776 A.2d at 651 (adopting the same).

Nevertheless, AGVSG is also entitled to an inference that it suffered lost profits as the result of a breach with respect

15

to both the 2008 product order and the Interim Agreement if the finder of fact finds either a breach or an enforceable promise. See Anderson, 477 U.S. at 255 (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970)) (noting that in reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party.). Accordingly, LeMans is not entitled to summary judgment with respect to damages because there is a genuine issue of material fact as to the existence of either a breach or an enforceable promise.

### III. CONCLUSION

For the foregoing reasons, this Court will, by separate order, GRANT in part and DENY in part LeMans's Motion for Summary Judgment. (ECF No. 57). Summary judgment will be granted in favor of LeMans as to Count II to the extent it concerns the Licensing Agreement. To the extent Count II concerns the 2008 product order, summary judgment will be denied. The Court will also deny summary judgment as to Count I.

Entered this 2nd day of December, 2013

/s/
_____
George L. Russell, III
United States District Judge